**LAVATAI TULEI of Nuuuli, Plaintiff**

**v.**

**SAVEA VALU of Laulii, Defendant**

No. 16-1938

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Mulitauaopele" of Laulii]

October 26, 1939

A. A. MORROW, *Chief Justice;* and MULI, *District Judge.*

Heard at Fagatogo October 17, 1939.

Tialavea & Aiumu for Valu; Sao & Saulogo for Tulei.

MORROW, *Chief Justice*

Savea Valu made application to the Attorney General to have his name recorded as the holder of the matai name Mulitauaopele. Lavatai Tulei filed an objection to the proposed registration and became a candidate for the name himself. Hence this litigation. Sec. 79(4) of the Codification.

■ Formerly the law was to the effect that the High Court, in a matai name case, should award the title to the candidate with the best hereditary right. This law was changed in 1937 to read:

"In the trial of Matai name cases, the High Court shall be guided by the following in the priority listed:

1. The wish of the majority of the family.

2. The forcefulness, character, personality, and leadership of the candidate.

3. The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail.

4. The value of the holder of the Matai name to the Government of American Samoa."

Sec. 79(4A) of the Codification of the Regulations and Orders for the Government of American Samoa.

■ Under the law as it now stands the Court should first determine which of the candidates the majority of the family wish to have the name. In this case each of the candidates filed a petition signed by various members of the Mulitauaopele family asking that he be awarded the name. 258 members of the family signed the petition for Savea Valu and 212 signed the petition for Lavatai Tulei. It is obvious that the signer of such a petition should be old enough to have an intelligent wish as to who he desires to be his matai. This Court has not found it necessary to determine what age a child ought to have attained in order to have an intelligent wish in regard to this matter. However, it is quite obvious that a child under ten years of age could not very well have the education and experience and mental development necessary to have such a wish. The Court has examined both petitions and finds that on Savea's petition no signer has given his age as under ten. On Lavatai's petition 31 of the signers give their ages as ranging from two to nine years respectively. At the hearing counsel for

Lavatai after examining the petition for Savea stated that he objected to 34 of the signers for Savea as being too young. He objected to three others on various other grounds, making the total number objected to 37. If we deduct the 37 names from Savea's petition we have left 221 not objected to. If we count every one of the signatures for Lavatai, including the signatures of the 31 giving their ages as from two to nine years, Savea still has a majority of the family supporting him.

If the contention of counsel for Lavatai that 34 signers on Savea's petition, all of whom are ten years of age or over, were too young to be considered has any validity it would follow as a matter of course that the 31 signers on Lavatai's petition ranging from two to nine years of age could not be considered either.

█ It is apparent from the testimony and from the record that Savea prevails upon the issue of the wish of the majority of the family. Under the law the wish of the majority of the family is to be given more weight in determining who shall have the name than any of the other three matters to be considered.

█ We think that Savea prevails on the issue of "forcefulness, character, personality, and leadership." It is true that he was in some difficulty many years ago when quite a young man. However, we do not believe, in view of the fact that at that time American Samoa had been under the authority of the United States only a few years, that he should be judged by the standards of Western civilization. Rather we should look at the matter in the light of conditions as they existed in this part of the South Seas at the time. In view of his apparent good conduct during the many years since the difficulty occurred, we think his character does not stand in the way of his becoming the matai. His capacity for leadership of the family is superior to that of Lavatai. Savea has a fale in Laulii to which village

the matai name Mulitauaopele is attached. He spends about half his time in that village. Lavatai rarely goes to Laulii and then only on short visits. The evidence leads us to believe that Savea is much better acquainted with the members of the family, their affairs, and their needs than Lavatai. Consequently he is better prepared to undertake the leadership of the family than Lavatai. The testimony showed that Savea cut about six times as much copra last year as Lavatai. We believe that he is more industrious than Lavatai and will as the matai set a better example for industry among the family members. His personality is as good as Lavatai's. Savea has never been brought into court for non-payment of his taxes. The testimony showed that just recently Lavatai was. Sec. 98(8) of the Codification reads in part as follows:

"Every taxpayer shall be listed for taxation in the village in which the matai of his family resides and each matai shall be personally responsible for the payment of the taxes of every member of said matai's family residing on said family lands."

It is apparent that a matai who does not pay his taxes on time and has to be brought into Court is not setting the right example for the other taxpayers in his family. He is not likely to carry out his duties under the law just quoted.

We shall next consider the matter of hereditary right. It appears to the court from the testimony that Savea is the true son of Savea Tata who was a former holder of the name Mulitauaopele. While there was some conflict in the testimony as to whether Savea Tata ever held the name we think the weight of the evidence is distinctly in favor of our conclusion on this point. The testimony also shows to our satisfaction that Pele Fia and Pele Tinoifili were related to Savea. Pele Fia was his cousin; just what Savea's relationship to Pele Tinoifili was does not appear from the testimony. That Lavatai was the son of a former holder of the name is clear from the testimony. His father was Pele

Lavatai Seinoa. Lavatai stated that he was related to some other Peles but did not know how. On the whole of the testimony it is apparent that Savea has as good a right to the name as Lavatai in-so-far as the matter of hereditary right is to be considered.

◼ The next and final matter for consideration is the "value of the holder of the Matai name to the Government of American Samoa." Copra and Samoan curios are exported. They bring money into American Samoa. When money from the outside world comes to American Samoa it improves economic conditions here and is indirectly helpful to the Government. Lavatai's testimony reveals that he cut $12.00 worth of copra last year. Savea's testimony shows that during the same time he cut $70.00 worth. Lavatai makes no Samoan curios for export. Savea does. Savea pays his taxes on time and it has not been necessary to bring him into court to collect them. This cannot be said for Lavatai. Savea's example as a taxpayer is much better for the members of the family to follow than Lavatai's. On the record of the testimony, it is apparent that Savea will be more valuable to the Government as the matai of the Mulitauaopele family than Lavatai.

◼ In view of our findings that Savea Valu prevails over Lavatai on the 1st, 2nd and 4th issues, and is at least on an equal footing with him on the 3rd issue of best hereditary right, it follows that he is entitled to the name.

The Attorney General will be advised to record Savea Valu as the holder of the matai name Mulitauaopele.

Costs of $25.00 are hereby assessed against Lavatai, the same to be paid within 60 days.